THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID DE FREESE, Appellant.—Appeal by defendant from a judgment of the County Court, Orange County, rendered February 11, 1976, convicting him of grand larceny in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial of defendant's motion to disqualify the District Attorney and to have a special prosecutor appointed to prosecute the case. By order dated May 1, 1978, this court remitted the case to the County Court for a hearing to afford the defendant the opportunity to demonstrate that he had been prejudiced by his representation prior to the trial by the then Chief Attorney of the Legal Aid Society of Orange County, who subsequently accepted an interim appointment as Orange County District Attorney (Norman Shapiro). The appeal was held in abeyance in the interim *(People v De Freese,* 63 AD2d 653). The County Court has complied and rendered a report in accordance therewith. Judgment affirmed. At the hearing it was established that Mr. Shapiro personally represented defendant at his arraignment on November 6, 1974, that he was Chief Attorney of the Orange County Legal Aid Society until August 19, 1975, and that he had personal knowledge of defendant's case while he was with that organization. The hearing record also reveals that as soon as he

was appointed District Attorney, sometime after August 19, 1975, Mr. Shapiro ordered that all pending cases in which defendants were represented by Legal Aid, be physically separated from other pending cases and placed under the direct and sole responsibility of Assistant District Attorney Martin Goldberg. After being placed in full charge of such cases, Mr. Goldberg authorized their disposition, assigned other Assistant District Attorneys to try them, and reported to no one about anything pertaining to them. With respect to defendant's case, Mr. Goldberg assigned Assistant District Attorney Zeccola to handle it. The latter prepared and tried the case against defendant. Mr. Shapiro never discussed the case with either Mr. Goldberg or Mr. Zeccola. In fact, except in one instance, Mr. Shapiro, while District Attorney, never discussed defendant or his case with anyone. The one exception involved a threatening letter sent defendant at the jail which was intercepted by the Sheriff's office and forwarded to Mr. Shapiro as District Attorney. Since the missive had been sent by United States mail, Mr. Shapiro forwarded the matter to postal authorities. Based on the foregoing facts we are convinced that during his tenure as District Attorney, Mr. Shapiro completely and effectively isolated and disassociated himself from defendant's case and the prosecution thereof. Moreover, it is manifest from the record that defendant has not been demonstrably prejudiced by Mr. Shapiro's prior affiliation. Accordingly, the judgment should be affirmed (see *People v Cruz,* 60 AD2d 872; see, also, *People v Loewinger,* 37 AD2d 675, affd 30 NY2d 587). Mollen, P. J., Titone and Shapiro, JJ., concur.

Hopkins, J., dissents and votes to reverse the judgment and order a new trial, with the following memorandum: We remitted this case to the County Court, Orange County, to hear and report on the denial of the defendant's motion to disqualify the District Attorney and to appoint a special prosecutor *(People v De Freese,* 63 AD2d 653). The report of the County Court Judge finds that Norman Shapiro, Chief Attorney for the Legal Aid Society of Orange County, represented the defendant after the defendant's indictment at the arraignment of the defendant on November 6, 1974. The record further indicates that by notice of motion dated September 6, 1974, Mr. Shapiro, while representing the defendant, moved for an order directing a mental examination to determine the defendant's competency to stand trial and to assist in his defense, and further determine whether the defendant suffered from a mental disease or defect. That motion on behalf of the defendant was granted. In an affidavit in support of the motion Mr. Shapiro stated: "2. That the defendant does not appear to fully understand the charge against him, and has exhibited suidical *[sic]* tendencies while in confinement at the Orange County Jail." After August 19, 1975 Mr. Shapiro became District Attorney of Orange County. The defendant was thereafter prosecuted by Assistant District Attorney Zeccola, under an assignment from Assistant District Attorney Martin Goldberg. The report finds that Mr. Shapiro, while District Attorney, placed Mr. Goldberg in charge of all cases within the District Attorney's office in which the Legal Aid Society represented the defendant before Mr. Shapiro became District Attorney and while Mr. Shapiro was the Chief Attorney of the Legal Aid Society. The report further finds that there was no actual prejudice to the defendant by the denial of the defendant's motion since Mr. Shapiro, while District Attorney, had insulated himself from the defendant's case. In my view, actual prejudice must be found to have resulted to the defendant by Mr. Shapiro's actions. Mr. Shapiro personally represented the defendant at the arraignment. Necessarily, Mr. Shapiro, in order to properly represent the defendant at that time, must have discussed with the defendant the facts

and circumstances of the case and defendant's defense—particularly since a plea of not guilty was entered by the defendant. Moreover, the affidavit of Mr. Shapiro indicates that he had consulted with the defendant. I do not consider it of any moment that Mr. Shapiro attempted to insulate himself from the defendant's case while Mr. Shapiro was District Attorney. In *Cardinale v Golinello* (43 NY2d 288, 295-296), the court said: "The constraints imposed by ethical precepts apply equally to all lawyers in a firm such as that which originally represented Golinello; if one lawyer would be disqualified from undertaking a subsequent representation, then all the attorneys in the firm are likewise precluded from such representation. (Cf. *Seaward v Tasker,* 143 NYS 257, revd on other grounds 171 App Div 964.) Thus, in this instance, if John Somers would be precluded from representing plaintiffs in this action so would Mr. Schiller. No one would seriously contend that Mr. Somers, having once represented Golinello in connection with the purchase of Cross County stock, would now be free to represent plaintiffs in their assertion of claims against Golinello arising out of the same transaction. 'Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidences and secrets of one who has employed or sought to employ him' (Code of Professional Responsibility, EC 4-1). 'The obligation of a lawyer to preserve the confidences and secrets of his client continue after the termination of his employment' *(op. cit.,* EC 4-6). 'The obligation [of an attorney] to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed' (former canon 6 of the Canons of Professional Ethics). The proscription against taking a case against a former client is predicated, however, on more than the possibility of use in the second representation of information confidentially obtained from the former client in the first representation. The limitation arises simply from the fact that the lawyer, or the firm with which he was then associated, represented the former client in matters related to the subject matter of the second representation. Accordingly, it is no answer that the lawyer did not in fact obtain any confidential information in connection with the first employment, or even that it was only other members of his firm who rendered the services to the client. Irrespective of any actual detriment, the first client is entitled to freedom from apprehension and to certainty that his interests will not be prejudiced in consequence of representation of the opposing litigant by the client's former attorney. (Drinker, Legal Ethics, pp 109, 115.) The standards of the profession exist for the protection and assurance of the clients and are demanding; an attorney must avoid not only the fact, but even the appearance, of representing conflicting interests *(Rotante v Lawrence Hosp.,* 46 AD2d 199; *Edelman v Levy,* 42 AD2d 758). '[W]ith rare and conditional exceptions, the lawyer may not place himself in a position where a conflicting interest may, even inadvertently, affect, or give the appearance of affecting, the obligations of the professional relationship' *(Matter of Kelly,* 23 NY2d 368, 376)." Once Mr. Shapiro had obtained knowledge concerning the case from the defendant, he should have acquiesced in the motion of the defendant for the assignment of a special prosecutor, and thus removed himself and his office from any appearance of conflict of interest. This case is unlike other cases in which a claim has been made that a lawyer representing several defendants placed himself in a position of representing conflicting interests (cf. *People v Wilkins,* 28 NY2d 53, 55; *Glasser v United*

*States,* 315 US 60). In those instances, a demonstration of actual prejudice must be shown. In this case the conflict arises not from the representation by a single attorney of conflicting interests of several codefendants in a criminal case, but from the conflicting interest necessarily arising from the prior representation of the defendant by the prosecutor as the defendant's attorney in the same criminal case. *People v Cruz* (55 AD2d 921; 60 AD2d 872) is distinguishable. There, there was no showing that Mr. Shapiro had any contact with the defendant while he was Chief Attorney of the Legal Aid Society, except to represent him on a bail application. Clearly, in this case, Mr. Shapiro's representation of the defendant upon defendant's arraignment required full knowledge of defendant's defense in order for him to represent the defendant properly at the arraignment. As Judge Jasen said in *People v Wilkins* (28 NY2d 53, 55-56, *supra):* "That is not to say, however, that a defendant would not be denied his constitutional right of effective counsel, if the *same* lawyer represented conflicting interests without his knowledge and assent. *(Glasser v. United States,* 315 U. S. 60; *United States v. Hayman,* 342 U. S. 205; *People v. Byrne,* 17 N Y 2d 209; *Porter v. United States,* 298 F. 2d 461; *United States ex rel. Miller v. Myers,* 253 F. Supp. 55; *People v. Stoval,* 40 Ill. 2d 109.)" Hence, I vote to reverse and order a new trial.